Our fourth and final oral argument this morning is 19-2154 United States v. Perez-Perez, and we have Ms. Keeval, and welcome back Ms. Walters. You may proceed when you're ready, Ms. Keeval. Thank you, Your Honor. Counsel, may it please the Court, my name is Shira Keeval. I'm an assistant federal public defender in Denver, and I represent the appellant in this case, Abiel Perez-Perez. Both parties in this case agree that Mr. Perez's guilty plea to illegally possessing a firearm was plainly constitutionally invalid because it was not knowing and voluntary. Therefore, the main question for this panel is about prejudice. Whether the government's proof that Mr. Perez knew that he was illegally or unlawfully in the United States was so overwhelming that he lacked even a plausible defense for trial. But Mr. Perez had a strong mens rea defense. He's married to a United States citizen. The government put him into deportation proceedings, but then the government let him out without deporting him. The government let him out of custody into the United States and then returned his bond money to him. And after that happened, Mr. Perez may well have believed that he was allowed to be here. He may be innocent. Before we get too deeply into the weeds on that, is that really the right question? Is it the question whether he had knowledge that he probably was guilty of the gun charge, or really is the question whether he believed the government could have proven the initial drug charges? Because those are the ones he was trying to get out of. And I think that you could make a credible case from this record that he really didn't care what the other charge was, as long as the penalties were a lot less. The critical thing was he had to know the government could have convicted him of the drugs originally. And I think that's pretty obvious that they could have. So why isn't that the question, rather than the question you posed? And your honor, I think that's part of the calculus. This court is describing what a plea agreement is in United States versus Weeks, says that the person who is accepting a plea agreement is making a deliberate choice between available alternatives. So both alternatives are important to this court's decision. But I don't think that this court can go so far as to say, well, this was a great deal, end of story. This was not such a great deal. This was a situation. It was a lot better deal than the other one. What if the government had said, we're going to ask you to plead guilty to a defective vehicle or bad muffler or something else? Would he now be able to get out of it by saying, I didn't have a bad muffler? Or would the government say, well, your obligation is to prove you wouldn't have accepted that deal? And of course you would have accepted that deal because it was a whole lot better than what you faced under the original charges. So the real question is, did you have reason to believe you could be convicted under the original charges? And your honor, this wasn't that great of a deal. This was a situation where, yes, he got something. He got out of the mandatory minimum sentence. He got out of the mandatory minimum and got a lower recommended range as well. So it's not a that's not my understanding. My understanding is that he got a higher guideline range. And the reason for that is that the guideline range for the drug charges that were in the original indictment with the mandatory minimum and the drug charges that he eventually pled guilty to had the same guideline range. The difference was that he got an additional offense level because of this extra charge. So he pleads guilty to this gun charge. The charges do not group together because they happen at completely different locations or completely unrelated to each other. But because of that, under this court's grouping rules, under the guidelines grouping rules, he had one extra offense level. So his guideline range under this plea was higher than it would have been if he had gone, excuse me, if he had pled open to the indictment in this case. So that means that the calculus here is different. This is particularly the case I know of last year's statistics from the United States Sentencing Commission. I think this is relatively consistent year to year, is that 75 percent of criminal defendants receive within guideline ranges. So what he's doing is he in this case is saying, okay, I'll plead guilty to being a non-citizen in possession of a firearm because I'm not a citizen and I didn't have a firearm. Fine, you can prove that. Yes, that raises my guidelines, but I'll get around this mandatory minimum. So that's one calculus. That's the calculus that exists both under the very deficient plea agreement in this case and before Rehaith. The calculus that we have now is what's important to say, okay, did this calculus change? Did he really make a deliberate choice between available alternatives? He made a choice between one true alternative and what I would call a fake alternative. I don't think that this court can say, well, that plea agreement was so good that Mr. Pettis may well have pled guilty to a felony that he did not commit. Well, we can't say one way or the other. It's his burden to prove, isn't it? Doesn't he have the burden to prove that but for this he would have done something different? So we have to look at whether he's satisfied his burden. And your honor, I'm going to quibble. Yes, your honor, but I'm going to quibble a little bit with the language that your honor just used. It's not a but for, we don't have, it's a much lower standard than that. What we have to show is that there is a reasonable probability that the outcome of this case would have been different, that he would have made a different choice. I agree with that. Fair first statement. Okay, thank you. And I think that we have that here. That's where the facts of this case, the facts underlying both what he was told and what would have happened at a trial with the correct elements of this gun charge are important. I know that the government has faulted Mr. Perez for not being able to point to anywhere in the record where he says, well, I didn't know that I was illegally or unlawfully in the country. And that's, I think, in this case where you have, you know, the plea agreement was so wrong that he had no reason to do that. Why would he say, well, I didn't know I was illegally or unlawfully in the country? Because nobody told him that it mattered that he was illegally or unlawfully in the country. All they said is it matters that you're not a United States citizen. So that doesn't, however, prevent Mr. Perez from meeting his burden in this case. His burden can be met either through that type of direct evidence or through the other type of evidence that we do have on this record. And we have significant evidence on this record from the sentencing hearing, from his pre-sentence report, from the sentencing presentation that his lawyer made that makes us know that he may well have believed, well, the government said they were going to deport me. And then they said, no, we're not going to deport me, you. And they let me out and they gave me my bond money back. And here I am. And I guess I'm allowed to be here. When did we expect him to know he needed a green card or naturalization? And your honor, I think that there's a few parts of that question. One is timing. And one is what did he need to stay in the country? So let me start with timing. And not very much time has passed. We don't know exactly how much. We know that he was returned his bond money in 2017. And we know that the offense date here, the date that they found these firearms in his home in Las Lunas, was October of 2017. So there's not a great deal of time that's taken to process the long road that it is to go down to obtain U.S. citizenship. So one part of your question is, I think, I don't know if there may be a case where you say, okay, but it's been 10 years, how could you possibly think that you were just allowed to stay for 10 years? But that's not this case. We're talking about a period of a few months where he has been doing things. And then the other part of the question, your honor, was about a green card or U.S. citizenship. And I think it's really important to make clear that there are many people in this country who are not citizens who are allowed to possess firearms. There are many people in this country who do not have green cards who are allowed to possess firearms. The exactly where you are in your immigration step and whether it prohibition, I think is a very complicated question. And all this court can really do is what it's been doing in every other case. This court, all the courts around the country, with the possible exception of the Fourth Circuit, have really been looking and saying, well, what does this statute say? And what the statute says is that the government needed to prove beyond a reasonable doubt that Mr. Perez possessed a firearm and was illegally or unlawfully in the United States. And then the question under Rahafe, which was about that exact same clause, is what did Mr. Perez know? What are we sure he knew? And how might this have looked at trial? I'm going to go back, Judge Ebell, I don't know if you still have questions about this, but back to the original way that I was phrasing this about plausible defense at trial. And again, the reason that I'm using that phrasing, there's two reasons. One is that's the phrasing that's been used across the country in post-Rahafe cases. And intellectually, it makes sense as the phrasing, because we're talking about this balancing. We're talking about on the one hand, what are you getting out of the plea agreement? What is it that you've done? And on the other hand, what is it that a trial would have looked like? What would have you saying, I'm not going to plead to this exact same language, but it's come very close in the decision in Trujillo. It said where a defendant could credibly allege he did not possess the requisite intent to commit the charged crime. It would be unfair to convict the defendant without informing him of the intent element. Well, the defendant would ask, what would it look like at trial? Could they prove that charge? But I'm not sure that the record shows that that's what would be before Mr. Perez. I think that he wouldn't have had a trial on the gun matters, wouldn't have even been presented to him if he hadn't pled guilty to that, because the other charges would have still been outstanding, wouldn't they? And what he said was, I'm going to have to ask what the trial would have looked like on the drug charges. And your honor, I think that that is possibly true. And one calculus before him would have been, well, I could plead open or go to trial on these drug charges. And even if I plead open on them, my guidelines are lower. And yes, I'll have this mandatory minimum, but I won't have to plead guilty to this crime I didn't commit. But we also, there are a lot of other ways that this could have gone. We don't know for sure that that was the choice that was in front of him. It's possible that the government said, you know, we in the United States attorney's office are now looking to indict as many people and convict them of being unlawfully or illegally present, excuse me, illegally in the United States with a firearm. We are trying to get our statistics up on that. You're clearly guilty. Will you plead guilty? We don't know. Did they dismiss the drug charges before he pled guilty to the gun charge? So he pled guilty to two new drug charges and one new drug charge. And yes, then they dismissed the other ones after that. He pled guilty to the unquantifiable drug charge plus the gun charge. Unquantifiable drug charge, no quantity defined. Yes, Mr. Perez said, and he wasn't, you know, I know that there's some evidence on the record. We really didn't discuss it in our briefs that he was challenging drug quantity, but his challenge was quite small. It would have been the same challenge that he would have raised even if he had pled as he was charged. And it would not have impacted whether he could have defended on those other charges. So the question, Your Honor, is on the one hand, he's told, well, you can plead guilty. You get out of this mandatory minimum. You plead guilty to this other crime you're very guilty of, and we'll see if we can go below the guidelines, even though it's unlikely. That was the calculus. There's a different calculus now. There's a different calculus that really existed at that time, which is you can plead guilty, but you have to take this other charge that you might not be beyond a reasonable doubt, and you have this other option. Yes, Your Honor, one option would be to go to trial on the original indictment, but one option would be to plead guilty open on the original indictment, still get the three extra levels for acceptance of responsibility, still be allowed to make this most, almost every sentencing argument that he made, and ultimately be better off than he would have been under this particular plea agreement. So the calculus changes. It changes articulately. It changes considerably. It changes because he goes from unquestionably guilty to this imaginary crime of being a non-citizen in possession of a firearm to being maybe really not guilty of this actual charge of knowingly being illegally or unlawfully present in the firearm. If there are no other questions, I'd like to reserve the remainder of my time. Thank you, Counsel. Let's hear from the United States. Ms. Walters. Good morning, Your Honors. May it please the Court, Tiffany Walters for the United States. Mr. Perez has not carried his burden to show that there was a reasonable probability that but for the error, he would not have pled guilty. Mr. Perez has focused a lot on whether or not he has a plausible defense to the 922g charge. But as Judge Ebel pointed out, he was not facing a 922g charge in the original indictment. He was facing two more serious drug charges with mandatory minimums. And while now knowing that his request for a downward variance to 37 months would be denied, perhaps he sees that he is arguing that there wasn't a benefit out of that plea agreement. But at the time, the plea agreement allowed him to request that 37-month sentence, which would not have been on the table absent the plea agreement. In addition... Could you clarify? I know that the new charges did not carry the mandatory minimum. But was the guideline range for the new charges higher than the original guideline range for the old charges? There was an additional offense level point for the 922g charge. Although had he proceeded to trial, of course, he would lose acceptance of responsibility points on that front. The main difference is the absence of a mandatory minimum. I already said I understand the difference in the mandatory minimum. But was the guideline range higher or was it the same or lower on the new set of charges than the old charges? The guideline range on the new set except for acceptance responsibility would have been one point higher. Well, he could have had an acceptance of responsibility on the old ones too if he accepted them. That could be. The government could have also superseded. So the answer is you agree that the guideline, assuming the acceptance of responsibility applies on both scenarios, you agree that the guideline range was higher on the new set of charges? Yes, because the drug charges would group. Okay, thank you. That being said, that may not have been the choice that Mr. Perez faced. Had he declined the plea agreement, the government could have also superseded on all four charges and gone forward. So while he now says that there's a plausible defense on the 922g, by pleading to the information, it allowed him to avoid the mandatory minimums and ask for that 37-month sentence, which would not have been on the table. In addition to that, it's indicative that although Rahif came out the same month that Mr. Perez pled guilty and he wasn't sentenced until September, Mr. Perez made no effort to withdraw his plea based on Rahif. As lawyers, we all read Rahif when it came out. Why would Mr. Perez have read Rahif and then contacted someone and said, maybe I should do something about that guilty plea? Well, Mr. Perez would not have, but he was represented by counsel. Do we have any information in the record that counsel communicated with Mr. Perez about Rahif? We don't, but I don't think we can also presume that counsel was necessarily ineffective without any evidence in the record. Presume that they didn't make a calculated decision to, despite Rahif, go forward and obtain the benefit of the plea agreement. There's just nothing in the record to support that the counsel was ineffective. So, even if Mr. Perez was advised of the knowledge of status element and actually believed he had a plausible defense, there were good reasons for him to go ahead and plea to this plea agreement. Were there good reasons for him to think when he ultimately found out what Rahif said, weren't there good reasons to think, you know, I don't know why I pleaded guilty because I don't think, especially with the benefit of a good defense counsel, that why shouldn't he have reasonably, uh, strongly concluded the government never could have proven that he knew that he was illegally in the country. The immigration laws are very complex to me and, and, and I suspect that I've had more legal training than Mr. Perez. He had his bond money returned. The, the, the, uh, the, the, the removal proceedings were closed for whatever reason. So, why shouldn't he have concluded that, you know, if they're returning my bond money and they're closing my removal proceedings, you know, apparently, you know, I don't know why, but I'm fairly legal. Why shouldn't he have concluded that? Because there's not evidence in the record to necessarily support that presumption. It's possible he could have believed that, but it's possible that he could have been advised by his immigration counsel that administrative closure, whatever happened, did not, uh, constitute lawful status. It's possible that... Right. There's lots of things that we can speculate that are not in the record that, but, you know, I think you'd agree that we're really confined to the record. And if we look at the record, there's, there's really no counter to, uh, to, to, uh, defense counsel's argument about, I mean, we can speculate till the end of the day, but beyond that, why should we not credit his argument that he would have reasonably thought that he could have beaten this charge? Well, I believe the counter is that the burden of proof in this case, because we're on plenary review, is on the defendant. And here we're looking at a record where we have some evidence that perhaps there was administrative closure and perhaps one could for standard advisals by the immigration judge that administrative closure does not constitute lawful status or even entitle him to a work document. Um, if he was specifically advised of that, if his immigration attorney specifically advised him of that, that wouldn't support the belief. Also, there's nothing in the record to show that he actually was confused as to his status. Um, there's nothing to suggest that he would have believed that he... What, what, how could there have been? I mean, her argument is, of course, he's never said that I was about my status because we're confined to the, you know, to the appellate record. And there's not, there's no reason that he would have ever said when he's told that it was illegal to possess a gun because he was a non-citizen. There's no reason for him to have said that I was confused. I mean, it didn't arise in district court. Again, the information did indicate that he had to be illegally or unlawfully present. And again, we're presuming that his counsel during the advising him asked the elements of the crime. Uh, on the record, Mr. Perez indicates that he talked about both, he'd read both the information and the indictment, and he talked about the elements with his attorney, and then he understood, or the attorney informed him of what the government had to prove. So the idea that the attorney, his counsel, had no idea that he had to be unlawfully or, or illegally present, uh, lacks some traction. Um, in addition, we have cases where individuals have, in fact, below, made these claims. And those are the cases in which other circuits have found that there's a reasonable possibility that the, uh, the individual may have had, uh, misunderstanding as to their lawful status. In those cases, in Balde, and Jauer, and Russell, and the various circuits, there were all affirmative claims on the record below to suggest that the defendant, in fact, had this misunderstanding. Here, we're asked to presume that simply because he's uneducated, he didn't understand that he didn't have a green card, that he didn't have an approval for his application based on, uh, his marriage to a spouse, that he didn't have a, there's nothing in the record to indicate he even had received work authorization. Um, while immigration may be complicated, the concept of having something in hand that says just because you start a process doesn't mean you actually have status until you get something indicating you have that status. It's also asking us to presume on a record that's, it's incomplete, that he necessarily had an assistance of counsel before the immigration judge, and that the immigration judge did not provide standard advisals. So, I understand that there's a lot of information that's missing from the record, but the difficulty with this is, is the burden is on the defendant to show a reasonable probability that he wouldn't have pled guilty, and absent any of that evidence, we can't reach that presumption. Is there a presumption if a defendant knows that, uh, an element can't be proven? Uh, isn't that sufficient then to satisfy his burden? I'm sorry, your honor, could you repeat the question? Well, if the, if the defendant here didn't know whether he was legal or not, I suppose, I think the record doesn't show affirmatively that he knew he was legal. Is that right? The other, simply that he didn't necessarily know that he was illegal, or couldn't possess a gun. The evidence is, provides some indication, inconclusive, yes. And so, we ask, who has the burden of proof on that knowledge under Perez? What would the Perez had his burden on that? Well, here, because we're on plain error of view, the burden is on Mr. Perez to show that not only that he had a plausible defense, but, but that that plausible defense would have made a difference. So, here, not only do we have a complete record on the plausible defense, but we also know that he gained a very tangible benefit in being able to ask for a downward variance on the drug charges, neither of which were impacted by Rahif at all. And so, there's no reason to presume that he perhaps on a superseding indictment, and given up the possibility of asking for that 37 month sentence, which would have been foreclosed by that initial original indictment. If there's no further questions. I just did what I'm going to bless people's times, but I do have a couple of questions. Please. Defense counsel has also argued that when you're saying that he had a burden to prove that there was a reasonable probability that he would have pleaded not guilty, I think she's saying actually the standard is whether he satisfies his burden to show a reasonable probability that the error undermines confidence in the outcome. Do you agree that that's the standard? Everybody agrees that he bears the burden. Yes, I would agree that that is the standard, and in looking at the plea, it's whether or not there's a reasonable possibility that but for the plea, but for the error, he would not have pled guilty. And to follow up on Judge Evel's question, even if he thought, even if he knew that he was illegally in the country, isn't the calculus, just as Judge Evel said, whether or not he would have pleaded not guilty because he knew he was guilty, but he thought that the government couldn't prove it beyond a reasonable doubt. And he might even have, if he agreed with what you had just said in response to Judge Evel's questions, he may have been emboldened in that belief if there were all of these gaps in the information that was available to the government, because he knew that under the Fifth Amendment, he couldn't be compelled to testify against himself. And he could have had a reasonable calculus that there's no way that the government could have proven under Raheef that he knew that he was in the country unlawfully because that would have required guilt beyond a reasonable doubt about what was in his head when he got his bond money back and the removal proceedings were administratively closed. I would agree that's inconclusive on this record, but this isn't the record that the government would have necessarily had to go forward with a trial. I mean, the government wouldn't be limited to what we have here. I mean, the government possibly could have pulled a transcript from immigration proceedings to see if he was affirmatively advised. It's very difficult to evaluate here that the government would have no ability to put on a case as to knowledge. There may well have been evidence that the government could have unearthed to move forward with the 922G charge. And I don't think the record here gives us the answer to that one way or the other. Those are all the questions I had. Thank you. Well, if there's no further questions, the United States would ask the court to affirm the convictions in this case. Thank you, Ms. Walters. Thank you. Could you give 60 seconds for rebuttal, please, Ms. Anderson? Thank you. Your Honor. There's a lot of focus, and I think understandably, on the fact that this is Mr. Perez's burden. But it's important to remember that it's essentially the same as the government's burden on regular harmlessness. It's the same burden. It's not particularly high. What we need to show is a plausible defense that changes this calculus. As the government admits now, it's possible that the government threatened that they were going to supersede with this count. There's a lot of different possible outcomes that could have happened, and we just need to show that there's a reasonable probability that it would not have been this one. One of the confusions, I think, here is that the burden is on Mr. Perez on the third prong, but the burden at trial is on the government to prove beyond a reasonable doubt that he is, in fact, guilty. And with the information that we have on this record, that's not something that we know that the government could do that undermines the confidence in this outcome. It shows that this error is not harmless, and that's sufficient to Mr. Perez's burden. May I ask you a question? If we agree with you that it was error here, what happens next? It's remanded. Does the government have a chance to come up with new charges against him? What would be this future scenario if we agree with you on this appeal? And, Your Honor, I think that we agree with the government that Mr. Perez would be allowed to withdraw his guilty plea to this charge, that obviously the gun conviction and the gun sentence would be vacated. There seems to be some disagreement over whether the drug sentence also needs to be vacated or merely do we leave that up to the district court to decide what to do. I think it's clear that that has to be vacated because it's connected. And then it goes back as basically an open remand from there to the district court to have further proceedings. None of us have asked for any other relief. The government has not asked to get out of the plea agreement. Mr. Perez has not either. And Mr. Perez has not asked for any targeted remand than that. Well, wait a minute. He hasn't asked to get out of the plea agreement. I thought that was what this appeal was all about. I'm sorry, Your Honor. He didn't ask to just have the plea agreement go away, take back both his guilty pleas. The government didn't ask for that either. He's just asking to be allowed to withdraw the plea on the gun charge. So, yes, I understand. I'm sorry. I didn't mean to create confusion when I'm so far over my time already. That's all right. Okay. Thank you. Do you have anything you want to add to that before we're done? No, thank you. No, I'm all right. Thank you so much, Your Honor. All right. Thank you much, counsel. You are excused then. The case shall be submitted.